UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRCIT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN KELLEY AND MARY KELLEY § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> CITY OF SAN MARCOS, JOHN § <br> DEHKORDI, ANDREW WISENER, BASIL § <br> PIERCE AND JOHN DOES § <br> Defendants. § | | CASE NO. 1:21-CV-00458-ML |

## DEFENDANT CITY OF SAN MARCOS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW, Defendant City of San Marcos, and files this, its Motion for Summary Judgment, and in support thereof would respectfully show this Court as follows:

## I.
## SUMMARY OF MOTION

Plaintiff John Kelley, who is deaf, files suit against Defendants alleging damages resulting from the use of force by City of San Marcos police officers that occurred on May 25, 2019. *See* Plaintiffs' First Amended Complaint *Doc. 9*. With respect to the City of San Marcos, Plaintiff initially asserted claims for alleged violation of 42 USC §1983 and Title II of the Americans with Disabilities Act (ADA). Adopting and granting Defendants' Motions to Dismiss, the 42 USC §1983 cause of action against the City of San Marcos was dismissed [*Doc.40*], leaving only the ADA claim remaining against the City of San Marcos.[1]

Plaintiff claims that the City of San Marcos violated the ADA when the police failed to accommodate his disability by not providing communications aids and services. *Doc. 9, p.9*. Plaintiff alleges that under the Texas Commission on Law Enforcement ("TCOLE") guidelines,

---

[1] A 42 USC §1983 claim asserting excessive use of force against the individual Defendants also remains outstanding and will be addressed in a separate motion.

officers must use "best practices" when faced with emergency situations and are unable to obtain an interpreter quickly, such as using "the notes app to write messages back and forth." *Id*. The officers did not use the "notes" app, Plaintiff complains, until after the "attack" concluded, thus allegedly violating his "rights by failing to provide him reasonable accommodation in their execution of police tactics, including use of force." *Id*. The Complaint makes no allegation about any alleged failure to accommodate after the use of force ended and the officers started using the notes app to communicate.

The City of San Marcos is entitled to summary judgment on Plaintiff's ADA claim. The officers were not aware that Mr. Kelley was deaf until after force was used; they used force in the process of securing the scene; and all force stopped and his disability was accommodated once the officers learned he was deaf. Accordingly, the City of San Marcos is entitled to summary judgment and dismissal of Plaintiff's ADA cause of action.

## II.
## EVIDENCE SUPPORTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant relies on the summary judgment evidence attached hereto in Support of Defendant's Motion for Summary Judgment.

## III.
## STATEMENT OF MATERIAL FACTS

The police response and physical contact are largely captured on audio and videos: the dash camera of Officer Dehkordi (*Exhibit 1-A*) (DF00002), and the body camera videos of Officer Dehkordi (*Exhibit 1-B*) (DF00007), Officer Pierce (*Exhibit 1-C*) (DF 00022), and Officer Wisener (*Exhibit 1-D*) (DF 00025).

The interaction was initiated when San Marcos police officers were dispatched in response to a 911 call reporting a domestic dispute with a possible assault. The witness reported that there was a "couple that's fighting off 35" and that a "lady just fell to the ground . . . she's on the ground

and all her children are around her." *Exhibit 2 at 3:15 to 5:00.* (DF 0026). The suspect was "walking toward DPS" and was identified as "white . . . he's about 6 feet 2 inches, heavyset." *Id. at 5:25-6:10.* The individual was later identified as Plaintiff John Kelley and he turned out to be 6'9" and about 400 lbs. *Exhibit 4, p.16-17.*

The call was treated as a priority one call due to the possible assault, and officers responded with lights and sirens. *Exhibit 3, p.109.* Officer Dehkordi has his police lights on when he arrived at the scene and observed a male walking that matched the description of the male. *Id., p.110.* While Officer Dehkordi did not obstruct Kelley's path, he did park where Mr. Kelley had to walk past his police car. *Id., p.111.*

As depicted in the dash camera video, Officer Pierce addressed Plaintiff and said "can I see your hands, please" for purposes of detaining him for the investigation. *Exhibit 1-A at timestamp 01:47:36.* Plaintiff's hands were near or in his pockets. *Id.* Plaintiff walked right between two police vehicles as the officers are heard shouting "stop." *Id.* Officer Dehkordi attempts to place his hand on Plaintiff's arm, but Plaintiff jerks his arm free and raises his arms, gesturing at Officer Pierce. *Id., at timestamp 01:47:42.* It was at that point that the officers start using force. *Exhibits 1-A, 1-B, 1-C.*

Plaintiff admits that he saw a police car pull his wife over and he "continued to walk on." *Exhibit 5, p.72.* He recognized them as officers, as "they had their lights flashing and everything. *Id., p. 79.* When he saw the lights, he admits that he realized "the cops were trying to stop me and talk to me." *Id., p. 83-84.* However, it is clear from the body cam footage that he did not stop, and he did not make any effort to let the officers know that he was deaf. He also admits that as soon as he said "I'm deaf. I'm deaf" and was pointing to his ears, "The cop froze and he stopped." *Id., p.77.* Once he informed the officers he was deaf, all force, "immediately stopped." *Id., p.102.* The officers then began communicating with some sign language, the notes app, and the assistance of

Plaintiff's wife. *Exhibit 1-A, 1-B, 1-C, 1-D.* EMS responded and addressed Plaintiff's needs, and then Plaintiff was released without any charges after his wife denied she was assaulted. *Id.*

## IV.
## FEDERAL SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper if the pleadings, discovery and other materials on file show there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). The burden of proof in a summary judgment proceeding is on the same party who would bear the burden of proof at trial. *Id*. at 324, 106 S.Ct. at 2553.

A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *Celotex Corp.*, 477 U.S. at 322-25. The party opposing the motion must then come forward with affirmative evidence to defeat it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Conclusory allegations, speculation and unsubstantiated assertions are not adequate to satisfy the non-movant's burden. *Douglas v. United Services Auto Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

## V.
## ARGUMENTS AND AUTHORITIES

A.   **General Title II ADA Legal Standard.**

Title II of the ADA prohibits discrimination based on disability by public entities. Subtitle A of Title II provides that: [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

A plaintiff can satisfy the knowledge element by showing that he identified the disability and the resulting limitation to a public entity or its employees and requested an accommodation in direct and specific terms. *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017). "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)).

"[T]he ADA does not require clairvoyance." *Windham*, 875 F.3d at 237. Rather, a "critical component of a Title II claim for failure to accommodate . . . is proof that the disability and its consequential limitations were known by the entity providing public services." *Id*. "Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances." *Id*.; *see also Greer v. Richardson ISD*, 472 F.Appx. 287, 296 (5th Cir. 20120) ("there is a common sense aspect to determining whether a public entity has provided accommodations for a disabled individual, part of which requires the public entity be made aware of the inadequacy of the accommodations provided"); *Watson v. Utah Highway Patrol*, 2019 WL 11314971, at *3 (D. Utah Dec. 27, 2019) (dash-cam video showed Plaintiff's condition requiring certain transportation was not obvious); *Stanley v. Canino*, 2023 WL 3438111, at *3 (E.D. Ark. My 12, 2023) (it was "objectively reasonable" for officers to use force to subdue suspect where his diabetes was not known).

B.  **Title II ADA Standard as applied to Urgent Police Response.**

Title II of the ADA is inapplicable to law enforcement initial on-the-street responses to reported disturbances or other similar incidents. *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000). In *Hainze*, an ADA cause of action was asserted for a mentally disabled individual on the grounds that before force was used, the officer "never engaged him in conversation to calm him, never tried to give him space by backing away, never attempted to defuse the situation, never tried to use less than deadly force, and never attempted to create any opportunities for the foregoing to occur." *Id.*, *p.800-801*.

The Fifth Circuit expressly held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id., p.801*. The Court further noted:

> Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.

*Id*. "Our decision today does not deprive disabled individuals, who suffer discriminatory treatment at the hands of law enforcement personnel, of all avenues of redress because Title II does not preempt other remedies available under the law." *Id*. "We simply hold that such a claim is not available under Title II under circumstances such as presented herein." *Id*.

The Court further stated that it was "not persuaded that requiring [the officer] and other similarly situated officers to use less than reasonable force in defending themselves and others, or to hesitate to consider other possible actions in the course of making such split-second decisions,

is the type of 'reasonable accommodation' contemplated by Title II." *Id*. at 801-802. "Once the area was secure and there was no threat to human safety, [the officer] would have been under a duty to reasonably accommodate [Plaintiff's] disability in handling and transporting him to a mental health facility." *Id., p.802*.[2]

Other courts have followed the *Hainze* decision and have ruled that the ADA is inapplicable to scenarios such as the one involved in this matter. In *Orr v. City of Oak Ridge North*, 2008 WL 11502065 (S.D. Tex. Oct. 28, 2008), the district court considered the arrest of a suspect in a pickup truck in a parking lot who had a pocket knife and was believed to be suicidal. The officers eventually used a "flashbang device" which deployed an explosive charge to allow the officers to take Plaintiff into custody. *Id*. at *1-2. The court noted that "[a] plaintiff can succeed on an ADA claim only if the evidence supports a finding of intentional discrimination." *Id*. at *12. The court cited to *Hainze*, noting that Plaintiff had refused to comply with the officers' requests and did not allow the officers to verify that he did not have a weapon and was not a threat. *Id*. "As it turned out, the situation was not resolved until Plaintiff was in custody. Defendants' motion for summary judgment on Plaintiff's ADA claim should be granted." *Id*.

Likewise, in *Bircoll v. Miami-Dade County*, 410 F.Supp.2d 1280 (S.D. Fla 2006), *aff'd*, 480 F.3d 1072 (11th Cir. 2007), Plaintiff, who was deaf, alleged that his ADA rights were violated when the officers failed to provide him with an interpreter and a telephonic device for the deaf. The district court concluded that the ADA was inapplicable to a DUI arrest. *Id*. at 1284.

In *Patrice v. Murphy*, 43 F.Supp.2d 1146 (W.D. Wash. 1999), Plaintiff who was deaf and arrested on a domestic violence charge argued her ADA rights were violated.[3] The district court noted that "forestalling all police activity until an interpreter can be located to aid communication

---

[2] The ADA expressly provides that reasonable accommodations should be given when transporting persons, meaning this statement is limited to situations involving transportation. *Bircoll v. Miami-Dade Cnty.*, 410 F.Supp.2d 1280, 1284 (S.D. Fla. 2006), *aff'd*, 480 F.3d 1072 (11th Cir. 2007), *citing Hainze*.
[3] It should be noted the officers knew Plaintiff was deaf, yet the court still determined the ADA did not apply.

with the deaf protagonist would be impractical and could jeopardize the police's ability to act in time to stop a fleeing suspect, physically control the situation, or interview witnesses on the scene." Id. at 1160.

In *Rockwell v. City of Garland, Texas*, 2013 WL 4223223 (N.D. Tex. Aug. 14, 2013), Plaintiff, who was schizophrenic, alleged violation of his ADA rights when he was arrested at his home. Based on an assault threat made earlier, his history of violent and suicidal behavior, and his unstable mental state, the officers decided to arrest him, breaching the door to his room. The district court noted the requirements a plaintiff must show to maintain an ADA claim: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability. *Id.* at *3, citing Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The court noted that "[t]he ADA does not reach the officers' conduct because they acted in the face of exigent circumstances." *Id*. at *6, citing Hainze*, 207 F.3d at 801; *see also Waller v. City of Danville, Va.*, 515 F.Supp.2d 659, 664, *citing Hainze* ("Exigent circumstances, for the purposes of this exception, apply whenever the policy, whether in the course of an arrest or investigation, reasonably believe that any officer or third party's life is in danger"). The court further concluded that "the officers were justified in concluding the scene was not secure, and that [Plaintiff] continued to pose a threat to his own life and to the lives of others." *Id*. at *7; *see also Schmidt v. Tex.*, 2009 WL 7808952, at *4 (S.D. Tex. Jan. 12, 2009) ("it is unreasonable to require policy to modify procedures before they physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety").

**C.     Application of Title II ADA Law to Plaintiff's Case Dictates Dismissal.**

Plaintiff's ADA claim fails as a matter of law and must be dismissed. The undisputed evidence, as largely captured on audio and video, confirm that the officers were unaware Plaintiff

was deaf when they initiated interaction with him, and all force ceased and they initiated alternative communication options with him once they were aware of his condition. Additionally, given the nature of the emergency call they were responding to and the circumstances facing the officers, even if they were aware of his condition, they were authorized to take action to secure Plaintiff and the scene without having to address ADA accommodation requirements under Fifth Circuit precedent.

The police officers were responding to a priority one 911 call after a witness advised that there was a domestic disturbance in which the woman had fallen to the ground. It was unknown whether an assault had taken place or whether the suspect was armed in any way. The officers arrived on scene in three marked police vehicles with lights flashing and were positioned in such a way that Plaintiff would and, he admits, he did, realize that police were on the scene. Plaintiff did not respond to oral commands, and he did not indicate that he was deaf. [4] When Officer Dehkordi placed his hand on Plaintiff's arm, Plaintiff pulled away and kept walking. Plaintiff, 6'9" and about 400 lbs, turned suddenly in Officer Pierce's direction and raised his arms, but continued walking away. It was at that point that force was used.

Plaintiff's own testimony acknowledges the role his behavior played in what occurred, admitting that:

>  (1) he was aware that officers had stopped his wife;
>  (2) marked police vehicle were around him;
>  (3) he knew that they were police officers;
>  (4) he refused to allow his arms to be pulled back;
>  (5) he kicked at the officers.

When he finally communicated that he was deaf, Plaintiff admitted that the officers "froze" and "stopped immediately." Officer Dehkordi then attempted to communicate with the "notes"

---

[4] Although Plaintiff does testify that he made a motion to his ear to indicate he was deaf prior to force being used, the objective video evidence makes it clear that he did not do so; and certainly that he did not do so in a way that a reasonable officer would have realized that was what was intended.

app on the cell phone, just as Plaintiffs' Complaint alleges he should have done. Plaintiff received medical attention and was then released.

The probative evidence establishes that the officers were unaware of Plaintiff's disability when they approached and tried to detain him. There can be no ADA violation for an alleged failure to accommodate a condition that was not known to the officers and when neither the condition nor the need for accommodation would have been evident. Moreover, as dictated by the Fifth Circuit, the ADA does not apply in this matter as the officers were acting to secure the scene and Plaintiff. Even in decisions where the officers were aware of the disability, courts have consistently ruled that the ADA did not apply until the area had been secured. Plaintiff's Complaint does not assert any violation of the ADA occurred after the scene was secured.

Plaintiff was not discriminated against because of his disability, nor is there any proximate cause between his injuries and his ADA claim. Accordingly, the City of San Marcos is entitled to summary judgment and dismissal of Plaintiff's ADA cause of action as a matter of law.

WHEREFORE PREMISES CONSIDERED, Defendant City of San Marcos prays that this Motion be granted, and for such other and further relief to which this Defendant may be justly entitled.

> Respectfully submitted,
>
> **FLETCHER, FARLEY,**
> **SHIPMAN & SALINAS, L.L.P.**
> 2530 Walsh Tarlton Lane, Suite 150
> Austin, Texas  78746
> (512) 476-5300
> FAX (512) 476-5771
>
> By:  /s/Joanna Lippman Salinas
>      Joanna Lippman Salinas
>      State Bar No. 00791122
>      joanna.salinas@fletcherfarley.com
>
> Attorneys for Defendants, *City of San Marcos, John Dekhordi, Andrew Wisner, and Basil Pierce*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Motion has been provided to the offices of:

Scott M. Hendler
Laura Goettsche
**HENDLER FLORES LAW, PLLC**
901 S. Mopac Expressway
Bldg 1, Suite #300
Austin, Texas 78746

Rebecca Webber
**WEBBER LAW**
4228 Threadgill Street
Austin, Texas 78723

by Electronic Service, in accordance with the Federal Rules of Civil Procedure, on June 2, 2023.

                                              /s/Joanna Lippman Salinas
                                              Joanna Lippman Salinas