```
 1              UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                     AUSTIN DIVISION

 3   JOHN KELLEY AND MARY KELLEY )
                                  )
 4   vs.                          ) CASE NO. 1:21-CV-00458-LY
                                  )
 5   CITY OF SAN MARCOS, JOHN     )
     DEHKORDI, ANDREW WISENER,    )
 6   BASIL PIERCE AND JOHN DOES   )

 7

 8              ORAL VIDEOTAPED DEPOSITION

 9                 SERGEANT KYE KENNEDY

10                  DECEMBER 20, 2022

11                  (Reported Remotely)

12       ORAL VIDEOTAPED DEPOSITION OF SERGEANT KYE KENNEDY,

13   produced as a witness at the instance of the Plaintiff

14   and duly sworn, was taken in the above-styled and

15   numbered cause on DECEMBER 20, 2022, from 9:46 a.m. to

16   3:53 p.m., before Sarah A. Prugh, Certified Shorthand

17   Reporter in and for the State of Texas, reported by

18   machine shorthand with the witness located in Austin,

19   Texas, pursuant to the Federal Rules of Civil Procedure,

20   the current emergency orders regarding the COVID-19

21   State of Disaster or by agreement of counsel, and the

22   provisions stated on the record or attached hereto.

23

24

25
```


EXHIBIT A

1              THE WITNESS:  I think there would still be
2    a reason for the stop.  Because again, we don't know why
3    she is on the ground and that is one of the things that
4    we need to be able to determine.
5        Q.   (By Mr. Puckett) Even though at that point, you
6    haven't actually spoken to a victim; is that right?
7    When I say you, I mean no one in the San Marcos Police
8    Department has spoken to a victim.
9        A.   Correct.
10       Q.   The person who called in to 911 said they
11   actually didn't see a violent act.
12       A.   Uh-huh.
13             MR. SOLOMON:  Objection, form.
14       Q.   (By Mr. Puckett) They caller to 911 doesn't
15   know the reason there is a female on the ground.  You
16   would still say that under those circumstances, that
17   there is reasonable suspicion that a crime has taken
18   place?
19       A.   Not that a crime has taken place but enough to
20   warrant stopping the other individual.  I mean sure,
21   that the offense didn't occur or that the offense did
22   occur.
23       Q.   You think a prudent officer who was fully
24   informed of those facts would think that the reasonable
25   next step would be to locate a victim and actually



1  perfect opportunity for him to comply assuming, again,
2  Officer -- without Officer Dehkordi knowing that he was
3  deaf, he could have turned and said I am deaf.  I can't
4  hear what you are saying.  I don't know what is going
5  on.
6      Q.   You just watched the video.  Isn't that what
7  John Kelley does when Officer Dehkordi grabs his wrist,
8  John Kelley immediately puts his hands up next to his
9  ears and you can almost see his mouth starting to say
10 the words I am deaf when he gets tased.  Isn't that what
11 he is doing?
12     A.   I don't know what he is doing.  It appears to
13 me that he is pulling his hands away from Dehkordi to
14 prevent him from holding on to him.
15     Q.   Let me ask you this question, sir.  Go ahead.
16 Finish your answer.
17     A.   Because it seems to me if you look at -- and
18 again, we have to review it again.  When he is on the
19 ground and he is pointing to his ears, it seems like he
20 is using his index finger to point to his ear to
21 indicate that he is deaf and not -- his hands up like
22 this.  He is actually pointing to his ears.  And when he
23 pulls away, it almost looks like he is pulling away to
24 prevent the officers from holding on to him.
25     Q.   Where were John Kelley's hands when Officers



1  Dehkordi and Pierce tased him?
2       A.   I do believe they were like this.
3       Q.   Hands up next to his head with open palms?
4       A.   I believe so.
5       Q.   When an officer tells you to put your hands up,
6  isn't that what you are supposed to do?
7       A.   Yes, sir.
8       Q.   When a subject is in the hands up position,
9  doesn't that indicate compliance?
10      A.   If they are not in the process of pulling away
11 from you, yes, sir.
12      Q.   Do you remember the line that you agreed with
13 just a moment ago, that when you haven't informed
14 somebody that they are under arrest, that they may be
15 legitimately surprised when you attempt to grab them and
16 may pull away just out of surprise; right?
17      A.   Yes, sir.  Again, out of surprise that they
18 don't know that you are there.  I think Mr. Kelley was
19 very clear, clearly knew that they were there and that
20 they were officers with their overhead lights on, with
21 their -- in their uniforms, that they were interested in
22 him.
23      Q.   So just because somebody is walking down the
24 sidewalk, just because police officers show up, that
25 person is supposed to immediately stop what they are



1  doing?  Is that how criminal procedure works?
2              MR. SOLOMON:  Objection, form.
3              THE WITNESS:  Well, again, it depends on
4  the way in which those officers arrived.  And if they
5  show up and you are the only person on the sidewalk,
6  again, I think that a reasonable prudent person would
7  stop to figure out what is going on.
8      Q.   (By Mr. Puckett) Maybe so.  But given the fact
9  that John Kelley had not done anything wrong that night,
10 isn't he within his legal rights as a citizen of the
11 United States to keep walking down the sidewalk despite
12 how many police show up and look at him?
13             MR. SOLOMON:  Objection, form.
14             THE WITNESS:  Legal, yes, sir.
15     Q.   (By Mr. Puckett) And if the officers don't have
16 reasonable suspicion that a crime occurred, the officers
17 are not within their rights to either issue commands to
18 him or to physically detain them; are they?
19     A.   If they don't have reasonable suspicion to
20 believe that he may have committed an offense, no, sir.
21     Q.   You are going to ask me many times today to put
22 myself in the officers' minds.  But if you put yourself
23 in John Kelley's mind, he had no reason to think that
24 the officers were looking to arrest him or detain him
25 that day because he hadn't done anything wrong; isn't



```
 1      A.    Three or four, maybe five times.
 2      Q.    Is that what happened here?
 3      A.    I don't remember exactly how many times they
 4   said it.
 5      Q.    Let's go back and watch the video.  I am going
 6   to share my screen.  We will look again at Exhibit 1002.
 7   This is Officer Dehkordi's body worn camera.  When you
 8   take a close look at this for a few seconds here and
 9   count to yourself the number of times that Mr. Kelley is
10   ordered to show his hands before Officer Dehkordi grabs
11   him or attempts to tase him or tases him; right?
12      A.    Yes, sir.
13                  (Video playing.)
14      Q.    (By Mr. Puckett) So how many times did you
15   observe that Mr. Kelley was told to show his hands?
16      A.    By Officer Dehkordi, just that one time.
17      Q.    One time.  So that would not count as numerous;
18   right?
19      A.    No, sir.
20      Q.    So the blue team report is not accurate when it
21   says that after numerous commands to show his hands.
22   That is not accurate; is it?
23      A.    Did Officer Pierce tell him to show his hands?
24   I don't remember.
25      Q.    Did you hear it?
```



Sergeant Kye Kennedy                                      December 20, 2022
                                                                 Page 182

1     Q.   Does this paragraph that we are looking at
2  here, does it include facts that are sufficient to allow
3  a reviewer to make those determinations about whether
4  the commands could be heard and understood and/or
5  whether the subject had an opportunity to comply?
6     A.   It does not indicate that.
7              MR. SOLOMON:  Objection, form.
8     Q.   (By Mr. Puckett) Let's look at the next
9  sentence there.  Look at the next sentence there where
10 it says the male tucked his hands under his chest.  Do
11 you see that?
12    A.   Yes, sir.
13    Q.   Is that an accurate statement?  Did John Kelley
14 ever tuck his hands under his chest?
15    A.   I remember his arms being underneath him.  But
16 I think watching the video, they are actually closer to
17 his face.
18    Q.   I agree with you.  So it is not accurate to say
19 that the male tucked his hands under his chest.  That is
20 not an accurate description; is it?
21    A.   No, sir.  They were under him, yeah.
22    Q.   In this summary that is provided here in the
23 blue team report, it doesn't mention any attempts of
24 deescalation that were used by the officers prior to
25 attempting to tase John Kelley; does it?



```
 1            UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
 2                    AUSTIN DIVISION

 3   JOHN KELLEY AND MARY KELLEY )
                                 )
 4   vs.                         )  CASE NO. 1:21-CV-00458-LY
                                 )
 5   CITY OF SAN MARCOS, JOHN    )
     DEHKORDI, ANDREW WISENER,   )
 6   BASIL PIERCE AND JOHN DOES  )

 7                   REPORTER'S CERTIFICATE

 8       ORAL VIDEO DEPOSITION OF SERGEANT KYE KENNEDY

 9                     DECEMBER 20, 2022

10                     Reported Remotely

11       I, Sarah A. Prugh, Certified Shorthand Reporter in

12   and for the State of Texas, hereby certify to the

13   following:

14       That the witness, SERGEANT KYE KENNEDY, was duly

15   sworn and that the transcript of the deposition is a

16   true record of the testimony given by the witness;

17       That pursuant to FCRP Rule 30(f)(1), request to

18   review the transcript was not made by either deponent or

19   party before the deposition was completed.

20       That pursuant to information given to the deposition

21   officer at the time said testimony was taken, the

22   following includes all parties of record and the amount

23   of time used by each party at the time of the

24   deposition:

25       Mr. Donald Puckett (5h18m)
            Attorney for Plaintiff
```



1        Mr. David Solomon (0h0m)
2            Attorney for Defendant

3        I further certify that I am neither counsel for,
4    related to, nor employed by any of the parties in the
5    action in which this proceeding was taken, and further
6    that I am not financially or otherwise interested in the
7    outcome of this action.
8        Certified to by me on this 3rd day of January, 2023.

9    *[Signature: Sarah A. Prugh]*
10   _____

11       Sarah A. Prugh, CSR
         Texas CSR 3972
12       Expiration: 1/31/24
         Magna Legal Services
13       Firm Registration Number 633
         16414 San Pedro, Suite 900
14       San Antonio, Texas 78232
         210-697-3400

