| | |
|---|---|
| John Kelley and Mary Kelley,<br>Plaintiffs,<br><br>City of San Marcos, John Dehkordi,<br>Andrew Wisener, Basil Pierce<br>and John Does,<br>Defendants. | §<br>§<br>§   Case no. 1:21-CV-00458-LY<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT CITY OF SAN MARCOS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Kelley hereby file his response in opposition to Defendant City of San Marcos' Motion for Summary Judgment (Doc. 64), and in support would show the following:

### I. Standard of Review

Summary judgment is proper when the moving party conclusively establishes that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

### II. Legal Argument and Analysis

Plaintiff maintains a claim against the City of San Marcos for violations of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. (Doc. 9). The Rehabilitation Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Title II of the ADA provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Fifth Circuit has said that the evaluation of a claim under these provisions is "substantially the same." The only material difference is that under the Rehabilitation Act "the plaintiff must establish that disability discrimination was the sole reason for the exclusion or denial of benefits," while under Title II of the ADA "discrimination need not be the sole reason." *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Id.* (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672–73 (5th Cir. 2004). The Fifth Circuit in *Hainze v. Richards* has also established that Title II of the ADA "does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." 207 F.3d 795, 801 (5th Cir. 2000). The City of San Marcos moves for summary judgment on the grounds that 1. The officers acted in the face of exigent circumstances and 2. The officers' response could not have been by reason of John Kelley's disability because they were unaware of his disability at the time the response took place. Both these arguments fail and there is a genuine question of material fact as to each one. Defendant the City of San Marcos does not move for summary judgment of Plaintiff's claim under the Rehabilitation Act in its motion. Defendant the City of San Marcos's motion for summary judgment of Plaintiff's Title II ADA claim should be denied.

1. **The officers' response was not in the face of exigent circumstances.**

On the evening of May 25, 2019, an individual called 911 regarding a disagreement they witnessed between John Kelley and his wife, Mary Kelley. **Exhibit A** DF 00040–41. The caller did not witness any assault. **Exhibit A** DF 00040–41 ("compl did not see if he had pushed her or hit her . . . She did not actually see the male strike or push the female."); s*ee* **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 110:10–22). John Kelley did not possess a weapon. **Exhibit E** Deposition of Officer John Dehkordi (Tr: 105:24–9) ("Q: my question is do you have any reason at all to even suspect that he was armed? A: No sir."); **Exhibit A** DF 00040–41 ("No known weapons were involved"); **Exhibit C** Expert Report of Jeff Noble and Declaration (KELLEY 00427–28; KELLEY 003853) ("There is no evidence that Mr. Kelley was armed with any type of weapon or that he made some type of movement prior to being tased that would suggest to a reasonable police officer that Mr. Kelley was reaching for a secreted weapon on his person."). When the police arrived, John was walking alone on a sidewalk along an empty parking lot. *See* **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 108:2–8). After John Kelley signed "I'm deaf" by placing his hands up by his ears, the officers tased and kicked him. *See* **Exhibit D** Deposition of John Kelley (Tr: 81:15–82:12); **Exhibit F** DF 00029–38.

The defendant City of San Marcos relies on the Fifth Circuit precedent from *Hainze v. Richards* that holds that the ADA does not apply to exigent circumstances in which there is a threat to human life. 207 F.3d 795, 801 (5th Cir. 2000). In *Hainze,* the officers responded to a call regarding an armed, intoxicated man who was threatening himself and others. *Id.* at 797. Officers arrived to find the plaintiff in that case holding a knife and standing next to an occupied vehicle. *Id.* That is unlike the instant case in which there is no report of assault or threats, and John Kelley was unarmed and alone in an empty parking lot. *See* **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 108:2–8); **Exhibit E** Deposition of Officer John Dehkordi (Tr: 105:24–9).

Defendant cites to *Orr v. City of Oak Ridge N.*, in support of their argument that an exigent circumstance existed. No. CV H-07-2295, 2008 WL 11502065 (S.D. Tex. Oct. 28, 2008). The *Orr* plaintiff possessed a pocketknife and refused to exit his vehicle when they sought to take him into custody. *Id.* at 1–2. After a protracted standoff with officers, one officer deployed a flashbang device in the vehicle as he feared that the plaintiff would flee. *Id.* at 2. The Southern District of Texas granted the motion for summary judgment, finding that the plaintiff posed a threat in his standoff with police. Unlike the *Orr* plaintiff, John Kelley did not present a threat of fleeing being in the vehicle. *See* **Exhibit G** DF 00022; **Exhibit H** DF 00025; **Exhibit I** DF00007. He did not possess a weapon. *See* **Exhibit E** Deposition of Officer John Dehkordi (Tr: 105:24–9). He did not engage in a protracted standoff with an officer or engage with officers in any way other than to communicate that he was deaf. *See* **Exhibit G** DF 00022.

As further support, Defendant travels to the Southern District of Florida. In *Bircoll v. Miami-Dade Cnty.,* the court held that "the ADA does not apply to on-the-street DUI stop" of a deaf individual. 410 F. Supp. 2d 1280 (S.D. Fla. 2006), aff'd, 480 F.3d 1072 (11th Cir. 2007). This inapplicable and noncontrolling case has already been distinguished by the Western District of Texas, albeit the San Antonio division. In denying the City of New Braunfel's motion to dismiss that relied on *Bircoll*, the Court in *Salinas v. City of New Braunfels* made clear that where there was no evidence that the plaintiff was a threat to the safety of the officers or that the scene was not secure and thus "the officers were under a duty to reasonably accommodate" plaintiff. 557 F. Supp. 2d 771, 775–777 (W.D. Tex. 2006).

Defendant cites a Western District of Washington case that holds that "forestalling all police activity until an interpreter can be located to aid communication with the deaf protagonist would be impractical and could jeopardize the police's ability to act in time to stop a fleeing suspect, physically control the situation, or interview witnesses on the scene." *Patrice v. Murphy*,

43 F. Supp. 2d 1156, 1160 (W.D. Wash. 1999). Though this dicta is not the Fifth Circuit standard, the facts of *Patrice* created a clear exigent circumstance. The plaintiff and husband engaged in a physical violence after the husband thought the plaintiff intended to kill him with a knife. *Id.* at 1157. Hearing the screams, the daughter called the police who arrested plaintiff after she admitted to assaulting her husband in writing. *Id.* at 1157–58. The *Patrice* plaintiff had engaged in a violent assault and was at one point in possession of a weapon. Even then, the *Patrice* officers communicated with her in writing, used her daughter as an interpreter, and took her into custody without exerting force. John Kelley did not threaten or hit anyone, and never had a weapon. *See* **Exhibit E** Deposition of Officer John Dehkordi (Tr: 105:24–9); **Exhibit G** DF 00022; **Exhibit H** DF 00025; **Exhibit I** DF00007; **Exhibit A** DF 00040–41.

In *Wilson v. City of Southlake*, the Fifth Circuit reversed the granting of summary judgment of an ADA claim based on the exigent circumstances exception. 936 F.3d 326, 328–29 (5th Cir. 2019). The defendant school officer in *Wilson* had handcuffed and berated a small child who had punched school officials and threatened the defendant with a jump rope. *Id.* The Court found that there was a genuine question of material fact as to whether exigent circumstances existed. *Id.* at 333. Summary judgment was reversed in *Wilson*, but this case is even clearer than *Wilson* as John Kelley did not threaten any person or brandish anything as a weapon. *See* **Exhibit E** Deposition of Officer John Dehkordi (Tr: 105:24–9); **Exhibit G** DF 00022; **Exhibit H** DF 00025; **Exhibit I** DF00007.

In *Hobart v. City of Stafford*, an officer fatally shot an unarmed man after a shouting match with between the officer, the man, and his wife. 784 F. Supp. 2d 732, 739–43 (S.D. Tex. 2011). The court denied summary judgement, finding that there was a fact question regarding whether there was an exigent circumstance where the decedent charged and hit the officer in the head. *Id.* at 741–42. Summary judgment was denied in *Hobart*, but this case is even clearer that *Hobart* as

John Kelley did not charge or strike anyone. **Exhibit G** DF 00022; **Exhibit H** DF 00025; **Exhibit I** DF00007; **Exhibit A** DF 00040–41.

    A.    **A fact question exists as to whether the scene was secured when approached John Kelley.**

At the time the officers approached Mr. Kelley there was no exigent circumstance—the scene was secured. The officers did not even have reasonable suspicion to issue commands or detain Mr. Kelley, much less the probable cause to arrest him. As Sergeant Kye Kennedy admitted:

> Q: The person who called in to 911 said they actually didn't see a violent act.
> A: Uh-huh.
> Q: They caller to 911 doesn't know the reason there is a female on the ground. You would still say that under those circumstances, that there is reasonable suspicion that a crime has taken place?
> A: Not that a crime has taken place but enough to warrant stopping the other individual.
> . . .
> Q: And if officers don't have reasonable suspicion that a crime occurred, the officers are not within their rights to either issue commands to him or to physically detain them; are they?
> A: If they don't have reasonable suspicion to believe that he may have committed an offense, no, sir.

*See* **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 110:10–22; 136:15–20). There was no report of an assault. **Exhibit A** DF 00040–41. There was no report of a weapon. *See* **Exhibit E** Deposition of Officer John Dehkordi (Tr: 105:24–9); **Exhibit A** DF 00040–41. There was no other individual around John Kelley when the officers arrived. *See* **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 108:2–8). Officers had no right to issue commands. Officers had no right to physically detain John Kelley. There was no need for officers to secure the scene at all.

From the onset of the interaction, the evidence shows that there was "no danger of physcial harm or a potentially life-threatening situation" in the instance case. *See Wilson v. City of Southlake,* 936 F.3d 326, 331–32 (5th Cir. 2019). To find that this was an exigent circumstance would be to find that officers every interaction with every person they encounter on the street without so much as reasonable suspicion that a "crime has taken place" is an exigent circumstance.

There is "sufficient evidence to raise factual issues as to whether [John Kelley's] actions could reasonably have been interpreted to present any serious threat, let alone threat of human life, and whether there was any need for the officer to secure the scene." *See Hobart v. City of Stafford*, 784 F. Supp. 2d 732 (S.D. Tex. 2011). There is a genuine issue of material fact regarding whether there was any need to secure the scene and thus the officers were under a duty to reasonably accommodate John Kelley.

**B.  A fact question exists as to whether the scene was secured when John Kelley raised his empty hands.**

After arriving at the scene, Officer Dehkordi ordered Mr. Kelley to show his hands one time. **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 174:14–175:10); *see also* **Exhibit I** DF 00007. Officers Dehkordi and Pierce then tased John Kelley as John raised his hands up to his ears, signing "I'm deaf." *See* **Exhibit J** Deposition of Corporal Basil Pierce (Tr: 168:12–16) ("Q: Where were Mr. Kelley's hands when you pulled the trigger on your taser? A: After reviewing the video, his hands were raised."); **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 134:25–135:4) (Q: Where were John Kelley's hands when Officers Dehkordi and Pierce tased him? A: I do believe they were up like this. Q: Hands up next to his head with open palms? A. I believe so.); **Exhibit D** Deposition of John Kelley (Tr: 81:15–82:12) ("by putting my hands up here putting at my ears, deaf, covering up my ears saying deaf, and they just shot immediately after that."); **Exhibit G** DF 00022; **Exhibit C** Expert Report of Jeff Noble and Declaration (KELLEY 00427–28; KELLEY 003853) ("Rather than actively resisting, Mr. Kelley had raised both of his empty hands and was turning toward Officer Pierce when he was tased by both Officer Pierce and Officer Dehkordi.").

When John Kelley turned to face officers with his hands up to his ears there was "no danger of physcial harm or a potentially life-threatening situation." *See Wilson v. City of Southlake,* 936

F.3d 326, 331–32 (5th Cir. 2019). *See* **Exhibit C** Expert Report of Jeff Noble and Declaration (KELLEY 00427–28; KELLEY 003853). A reasonable jury could find that there was no exigent circumstance when Mr. Kelley turned to face the officers with his hands raised above his head. Therefore, a genuine issue of material fact exists as to this question.

    **C.    The scene was secured when Mr. Kelley was laying prone on the ground with his hands above his torso.**

After being tased by Officers Dehkordi and Pierce, John Kelley was lying prone on the ground, trying to cover his eyes. **Exhibit J** Deposition of Corporal Basil Peirce (Tr: 137:17–24) ("I initially said in my information report that he had his arms tucked up underneath his torso, and I believe a few sentences later I said that his hands were under his torse, when his hands were, in fact, in front of his face."); **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 182:8–21) ("I remember his arms being underneath him. But I think watching the video, they are actually closer to his face."); **Exhibit G** DF 00022; **Exhibit K** Deposition of Officer Andrew Wisener (Tr: 137:10–20) ("Q: So you would agree with me, as you sit here and provide testimony today, that it is not accurate to state that John Kelley placed both hands under his torso, right? A: Correct."). As a deaf person, John's eyes are especially invaluable to him because if he cannot see then he has no method of communicating. *See* **Exhibit D** Deposition of John Kelley (Tr: 101:2–6). While John was laying prone on the ground with his hands by his face, Officer Wisener kicked him twice in the torso, claiming that:

> Not knowing what his intentions were of concealing his hands under his torso I became concerned of the possibility of him reaching for a weapon. In an attempt to take control of his hands using pain compliance I used the bridge of my foot to deliver two strikes to the right side of his stomach.

**Exhibit F** DF 00034. Mr. Kelley was told at the scene: "You were kicked because your hands were kept under your chest. That officer believed you may have been reaching for what could have been a weapon." **Exhibit L** Kelley 000012. But Mr. Kelley's hands were not under his torso, his

hands were up by his face. **Exhibit J** Deposition of Corporal Basil Peirce (Tr: 137:17–24); **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 182:8–21); **Exhibit G** DF 00022; **Exhibit K** Deposition of Officer Andrew Wisener (Tr: 137:10–20).

Officer Wisener had no reason to think that John Kelley was reaching for a weapon. **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 200:11–17) ("Q: John Kelley did not present a risk of grabbing a weapon from his waistband while he was laying on the ground; did he? . . . A: Not with review of the video, no."). **Exhibit C** Expert Report of Jeff Noble and Declaration (KELLEY 00427–28; KELLEY 003853) ("There was no evidence that Mr. Kelley possessed a weapon in either hand or that he made any motion to his waistband as though he was reaching for a weapon."). A reasonable jury could find that there was no exigent circumstance when Officer Wisener kicked John Kelley repeatedly in the side as John lay prone on the ground with his hands over his face and a genuine issue of material fact exists.

2. **The officers' response was by reason of John Kelley's disability.**

Defendant the City of San Marcos does not contest in their motion that John Kelley is a qualified individual within the meaning of the ADA; that they are a public entity; or that John was being "excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity." *See Wilson v. City of Southlake*, 936 F.3d at 330. Instead, the City of San Marcos argues that the officers' response could not have been the reason for John Kelley's tasing and beating because the officers did not know about his disability when they attacked him. But officers did not need to guess that John Kelley was deaf, because he told them he was deaf. In the few seconds before being tased, John Kelley informed the officers that he was deaf by signing "I'm deaf." **Exhibit D** Deposition of John Kelley (Tr: 81:15–82:12); s*ee Lewis v. Truitt*, 960 F. Supp. 175, 176–77 (S.D. Ind. 1997) (holding that application of the ADA was justified when officers did not

believe or fully understand that the plaintiff was deaf—and beat plaintiff because they thought he was being difficult and non-compliant—because "at least one of the officers should have known that he was deaf."). Here, at least one of the officers should have known that Mr. Kelley was deaf because he told them he was deaf. Officer Dehkordi had training in sign language both in school and training relevant to law enforcement. *See* **Exhibit E** Deposition of Officer John Dehkordi (Tr: 40:2–41:24). Additionally, unlike the Rehabilitation Act, for a plaintiff to prevail under Title II of the ADA the "discrimination need not be the sole reason" for the response. *See Wilson v. City of Southlake*, 936 F.3d at 330.

Officers issued one order to Mr. Kelley to put his hands up. **Exhibit B** Deposition of Sergeant Kye Kennedy (Tr: 174:14–175:10). Despite turning and raising his hands, officers still tased and beat him for not complying with their verbal orders. This is despite the fact the John Kelley is profoundly deaf and could not hear the officers' commands. Officers acknowledged to Mr. Kelley on the scene that "we obviously wouldn't have tased you in the beginning if we knew that you were deaf." **Exhibit L** Kelley 000012. Rather than mitigating the officers' conduct, this is a complete admission that John Kelley was tased and beaten because he is deaf. For if he was not deaf the officers "obviously" would not have begun the interaction by tasing him. To succeed under Title II of the ADA, the disability need not be the ***sole*** reason for the conduct, but here a reasonable jury could find that it was. There is a genuine issue of material fact regarding whether the officers' response was by reason of John Kelley's disability.

### III. Conclusion

The evidence in the record raises a genuine issue of material fact regarding whether the officers acted in the face of exigent circumstances and whether the officers' response was by reason of John Kelley's disability. The City's summary judgment motion regarding plaintiff's ADA claim should respectfully be denied.

Dated: June 23, 2023

                **Respectfully submitted,**
                **HENDLER FLORES LAW, PLLC**

*/s/ Laura A. Goettsche*
Scott M. Hendler - Texas Bar No. 9445500
shendler@hendlerlaw.com
Laura Goettsche - Texas Bar No. 24091798
lgoettsche@hendlerlaw.com
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Telephone: (512) 439-3200
Facsimile: (512) 439-3201

*-And-*

**WEBBER LAW**
Rebecca R. Webber - TX Bar No. 24060805
rwebber@rebweblaw.com
4228 Threadgill Street
Austin, Texas 78723
Tel: (512) 669-9506

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on June 23, 2023, which will serve all counsel of record.

*/s/ Laura A. Goettsche*
Laura A. Goettsche